Martin, J.
This is an application by the relator for a mandamus to compel the respondents to issue to her the certi *325 ficate required by chapter 654 of the Laws of 1872, to entitle her to a free scholarship in Cornell University.
The statute creating such free scholarships and providing to whom they shall be awarded, so far as the same is applicable to the question involved on this application, is as follows: “ The several departments of study in the said (Cornell) university shall be open to applicants for admission thereto at the lowest rates of expense consistent with its welfare and efficiency, and without distinction as to rank, class, previous occupation or locality. But, with a view to equalize its advantages to all parts of the state, the institution shall annually receive students, one from each assembly district in the state, to be selected as hereinafter provided, and shall give them instruction in any or in all the prescribed branches of study in any department of said institution free of any tuition fee or of any incidental charges to be paid to' said university, unless such incidental charges shall have been made to compensate for damages needlessly or purposely done by the students to the property of the university. The said free instruction shall, moreover, be accorded to said students in consideration of their superior ability and as a reward for superior scholarship in the academies and public schools of this state. Said students shall be selected as the legislature may from time to time direct, and until otherwise ordered, as follows: The school commissioner or commissioners of each county, and the board of education of each city, or those performing the duties of such a board, shall select annually the best scholar from each academy and each public school of their respective o ninties or cities as candidates for the university scholarship. But in no case shall any person having alreadv entered the said university be admitted as one of such candidates. The candidates thus selected in each county or city shall meet at such place and time in the year as the school commissioner or commissioners in the county and the said boards of bducation -of the cities in those counties which contain cities shall appoint, and the school commissioner or commissioners and *326 the said board oí education, or such of them as shall attend and act, shall proceed to examine said candidates, and determine which of them are the best scholars, and they shall then select therefrom to the number of one for each assembly district in said county or city, and furnish the candidates thus selected with a certificate of such selection, which certificate shall entitle said student to admission to said university, subject to the examination and approval of the faculty of said university (Chap. 654, Laws 1872).
The respondents did not at any time during the past year select any candidate or candidates for such free scholarship from the academies and public schools of Tompkins county as required by this statute. They, however, gave notice that at a time and place designated by them they would examine such persons as should attend for that purpose, and thereby determine to whom the scholarship for the year 1885 should be awarded. In pursuance of that notice, and on the thirteenth and fourteenth of the present month, the respondents held such examination. Upon that, examination four persons appeared as candidates and were examined. The persons thus examined were Frank Knapp, Arthur Curtis, the relator Mary E. Wright, and Mary Lawrence. Upon the completion of the examination the respondents determined that Frank Knapp was the best scholar, Arthur Curtis the second, the relator third, and Mary Lawrence fourth. Mr. Knapp is, and has always been, a resident of Tompkins county. He attended the public schools of that county until 1882, when he entered the State Normal School at Cortland, N. Y. He continued a scholar in that school until he was graduated in 1884, since which time he has been engaged in teaching. Mr. Curtis is also-a resident of Tompkins county. He was graduated from one of the public schools of that county in the year 1883, and has not since been a scholar in any of the academies or public schools of the county or state. Both the relator and Miss Lawrence were residents of Tompkins county, and both attended the Ithaca High School, which is one of the public schools of that *327 county, during the school year which commenced in the fall of 1884 and ended in the summer or fall of 1885. At the end of the last term of such school year they were graduated from that school. Since their graduation neither has been a scholar in any other school.
Subsequent to such examination and determination by the respondents, the relator duly demanded of the respondents that they should award her the Cornell scholarship for 1885, and issue to her a certificate of her selection, which they refused to do. That the candidates for this scholarship were not selected as required by law is conceded by all parties. Upon the argument, however, it was stipulated by the parties in interest that the application should be determined upon the sole ground of the eligibility as candidates of the persons examined. It is contended by the relator that neither Mr. Knapp nor Mr. Curtis was eligible as a candidate, and therefore although they were examined and passed a better examination than she, yet neither of them was entitled to such free scholarship. This contention is denied by the respondents and by Knapp and Curtis; and thus is presented the only question which it is necessary to determine upon this application. Was either Knapp or Curtis entitled to such free scholarship, although a better scholar than the relator % The determination of this question depends wholly upon the statute above quoted. It will be seen by an examination of that statute that one student from each assembly district in the county is to be selected each year by the commissioners for free instruction. The candidates for such free scholarship are to be selected from the scholars of the academies and public schools of the county. From these candidates only is the person'to receive free instruction to be selected. From the reading of this statute it is quite apparent, I think, that the person selected for a free scholarship must be a student from one of the academies or public schools of the county to entitle him to the free instruction therein provided for.
It is unnecessary to determine whether such applicant must *328 also be a resident of the county or assembly district, as that question does not arise in this case. But that' each of the candidates must be a student from one of the academies or public schools of the county to be eligible as an applicant is, I think, quite clear. The claim that the State ¡Normal School, located at Cortland, is one of the public schools of Tompkins county, within the intent and meaning of this statute, cannot, I think, be maintained. Hence, I am of the opinion that Knapp’s attendance at the normal school at Cortland does not entitle him to this scholarship.
But Knapp and Curtis each contends that he had in former years been a student in the public schools of Tompkins county, and is therefore entitled to become a candidate for this scholarship. The relator, however, while she admits that they were in former years such students, insists that they were not at the time of such examination scholars from the academies and public schools of the county, and hence were ineligible. Thus the question is presented whether the person to receive such scholarship may be selected from the best scholars who have at any time attended the public schools and academies of the county, or whether he must be selected from those who are the best students in those schools during the school year including or immediately preceding the time of the examination and selection. The statute in effect provides that free instruction is to be accorded to said students in consideration of their superior ability and as a reward for superior scholarship in the academies and public schools of the state. One of the purposes of this provision, then, was to provide such free instruction as a reward for superior acquirements and as an incentive to the students in each of these schools to attain superior scholarship. The statute also provides that the commissioners shall select annually the best scholar from each academy and each public school as candidates for this scholarship. ■ ■
These provisions indicate quite clearly, I think, that the intent of the statute is that the candidates for such scholar *329 ship shall be selected from those who are or have been scholars in these schools during the year in which the examination is had, or during the school year immediately preceding the time of the examination, when the examination is in vacation. The commissioners are each year required to select the best scholar from each school as such candidates. This must, I think, be held to intend that the selection shall be made from the scholars in attendance at such school during that year.
If the intent had been to include scholars who had attended these schools years before, some provision would have been made for notice to them so that all might have an opportunity to be examined as to their scholarship and to compete for §ucli candidacy. Ho provision of that kind was made. Moreover it can hardly be said that a person who has been an attendant at a school, but whose relations with that school have been completely terminated years before, is a scholar of or from such school. He may have been educated at "that school, but is not, I think, a scholar from it within the intent and meaning of this statute.
If the claim of the respondents were to be sustained it would follow not only that the scholars attending each of these schools would be brought into competition with all the scholars who had ever attended them, but it would also enable those who had once been applicants for such candidacy and failed to apply each succeeding year, and perhaps in the end succeed, to the exclusion of the best scholar attending that year.
If the construction contended for were to obtain it would practically subvert the purposes of the statute so far as this scholarship is intended as a reward to the scholars in these schools for superior scholarship, as under such a construction it might be indefinitely suspended, if not overthrown, and its purpose as an incentive to superior scholarship be easily defeated. I cannot think it will bear such a construction or that such was its intent.
Upon a careful reading of the statute I am of the opinion *330 that the intent of this statute was that the candidates for such free scholarship should each year be selected from scholars in the academies and public schools during that year. If correct in this conclusion it follows that neither Knapp nor Curtis was eligible as such candidate and cannot, therefore, be properly selected.
The position that the relator is not a scholar of the Ithaca High School because she was graduated at the close of its last term, and hence is eligible as a candidate, cannot, I think, be sustained. For the purposes of this act she must, I think, be regarded as a scholar of that school, at least until the end of the second year, and until that school shall again commence its sessions. The intention of the statute was that she might have all the advantages of that school so long as she was a member of it, and upon her final examination and graduation might then become a candidate for such scholarship.
For the reasons before stated I conclude that neither Knapp nor Curtis was eligible as a candidate for this scholarship, but that both the relator and Miss Lawrence were, and as the relator passed the better examination, and was the best scholar of the two last named, she is entitled to be selected for the scholarship from that county for the year 1885, and to a certificate of such selection. It follows, therefore, that the relator’s application should be granted and that of Curtis-denied. But as no bad faith upon the part of the respondents is shown, without costs to either party.